# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETS

UNITED AIRLINES, INC.,
a Delaware Corporation,

     *Plaintiff,*

v.

JOSHUA GREGORY ALLEN, an individual,
a/k/a JOSHUA GREGORY a/k/a ALLEN
GREGORY a/k/a GREGORY JOSHUA a/k/a
JOSHUA ALLEN and OMAR SAFAR
HALABI, an individual, a/k/A OMAR
SAFAR,

     *Defendants.*

CIVIL ACTION NO. 09-CV-10394 (NMG)

## Defendant Omar Halabi's Memorandum In Support of His Motion to Dismiss the Second Amended Complaint

### Counsel for Defendant Halabi

Todd S. Heyman (BBO# 643804)
theyman@shulaw.com
Ian J. McLoughlin (BBO# 647203)
imcloughlin@shulaw.com
Robert E. Ditzion (BBO# 660962)
rditzion@shulaw.com
SHAPIRO HABER & URMY LLP
53 State Street
Boston MA 02109
Telephone:  (617) 439-3939
Facsimile:  (617) 439-0134

1

Now on its third attempt, Plaintiff United Airlines, Inc. ("United") has again failed to allege specific facts that, if proven, would state a viable tort claim against Defendant Halabi.  Mr. Halabi is accused of wrongly acquiring and selling travel vouchers by taking advantage of United's aggressive overbooking of flights and United's self-drafted adhesion contracts that permit customers to cancel fully refundable tickets at any time for no charge.  United has ample resources and able counsel, and Mr. Halabi has already incurred considerable expense defending himself against United's baseless claims, including a federal trademark claim that even United abandoned in its Second Amended Complaint, Docket No. 63 ("SAC").  No further leave should be granted to cure United's inability to articulate how it was allegedly defrauded, or how that "fraud" purportedly caused tens of thousands of dollars in losses to United.

There is no fraud here because United did not and cannot allege that it reasonably relied on any misrepresentations to its detriment, and the SAC is devoid of specific factual allegations that would support such a claim.  United's other claims against Defendants are all derivative of its faulty fraud claim, and fail for other independent reasons as well.  Thus, like the First Amended Complaint, Docket No. 7 ("FAC"), the SAC seeks to commence a discovery fishing expedition in the hope of identifying facts that might someday support a viable fraud claim.  Such tactics are precluded by Rule 9(b) of the Federal Rules of Civil Procedure, and the new heightened pleading standards under Rule 8.  *Doyle v. Hasbro*, *Inc.*, 103 F.3d 86, 194 (1st Cir. 1996) (Rule 9(b) is designed "to prevent the filing of suits that simply hope to uncover relevant information during discovery.").

Even if, as the Court believes, Defendants have "made an effort to game the system" (Docket No. 59 at 3), that is obviously insufficient to remedy United's own decision to pursue its grievance exclusively through deficient tort claims stretched beyond what even the alleged facts

can support.  Moreover, such sympathy should be counterbalanced by United's decision to set up a gamed-system in the first instance, in which less informed passengers continue to suffer from United's overbooking profit model, unaware of the extent to which United consistently intends to bump them from flights and expressly disavow its contractual obligations.  *See* Terminal 250: Federal Regulation of Airline Overbooking, Blanchard, Elliott, 79 NYU Law Rev. 1799, 1799, 1818 (2004) (system currently "rewards the carriers that overbook aggressively" because "[g]iven the information asymmetries regarding the likelihood of being bumped, airlines have the opportunity to exploit passengers who cannot accurately discount an airline's probability of performance" permitting United to "sell its tickets at a higher price than if its propensity to overbook and under-compensate were known.").

These passengers have no recourse to tort law to cure such information asymmetries due to the Airline Deregulation Act's ("ADA") preemption provision.  Although this Court rejected Defendants' argument – in *dicta* – that United likewise has no recourse to tort law, it should reconsider its preemption decision.  If it does not, this will be the first Court ever to find that the ADA does not preempt state law tort claims involving a customer and airline in privity, having agreed to terms for air transportation services.  Unlike United's customers, United at least writes the adhesion contracts which define the scope of the parties' obligations and it can certainly draft language tailored to suit its objectives.  It does not need assistance from this Court to redraft them, or provide for different remedies, through Massachusetts tort law.  Nor does this Court have the power to do so under the ADA.

## I.    Relevant Procedural History And Factual Background Information

Defendants allegedly obtained vouchers by buying refundable tickets on overbooked flights and volunteering to be bumped, and then took advantage of the transferability of the

vouchers by selling them to third parties.  SAC, ¶15.  Nothing in United's contracts prohibited the acquisition or transfer of the vouchers, but United contends their sale was prohibited because some, *and only some*, of the vouchers say "void if sold."  SAC, ¶¶ 12, 22.[1]  United's tort claims are predicated on two forms of alleged fraudulent conduct.  First, United contends Mr. Halabi committed fraud to obtain vouchers through his actions in purchasing the ticket and volunteering to be bumped from the overbooked flights.  Second, United alleges that the presentation of the vouchers after their sale likewise constituted fraud.

## A.    The FAC's Fraud Theory Was Correctly Dismissed

For the sake of clarity, it should be noted that the fraud theories advanced in the SAC are markedly more narrow than those articulated in the FAC.  In the FAC, United's fraud theory was premised on the Defendant's failure to disclose two facts to United.  First, United alleged that Defendants bought fully refundable tickets on flights without disclosing that "they never intended to take the flights or pay United for the reservations they booked."  FAC ¶48.  Second, United alleged that Defendants' failure to disclose the sale of the vouchers "caused void flight vouchers to be redeemed by those to whom Defendants have sold the vouchers."  FAC ¶52.

---

[1] United, however, does not regularly enforce the purported anti-sale language on the voucher and has not brought a breach of contract claim.  Indeed, there has been a secondary market for travel vouchers (as well as frequent flyer miles and similar travel coupons) for quite some time.  The airlines have accepted this secondary market because, on the whole, it is more profitable to them even if there is a remote chance that a few customers in the secondary market may have ultimately ended up purchasing regular fare tickets in the primary market from one of these airlines.  That is because airlines like United depend on the vouchers being valuable to customers for their profit model to work.  If passengers could not readily transfer the vouchers (including by sale), they would be less likely to accept them in exchange for giving up their seats on United's constantly overbooked flights.  If there were insufficient volunteers to give up seats on these overbooked flights, United would lose market share as unhappy customers would not return to book flights with United after being involuntarily bumped from their flights.  Airlines like Jet Blue, that do not overbook, would pick up these customers because a reserved seat on the flight would always be assured.  Moreover, the vouchers essentially cost United nothing.  The vouchers cannot be used to book reservations on flights unless United believes that those flights will be sufficiently empty that it will not lose the opportunity to sell tickets due to voucher use.  Because the vouchers are used only on flights which are unlikely to ever be full, they do not adversely affect United's revenue since fare-paying customers are not displaced.  On the contrary, United can sell even more tickets than the number of seats on the plane with virtually no risk of ever losing money.  As a result, United neither asks customers whether the voucher was sold nor requires customers to certify that the voucher was not sold when making reservations.  Its "don't ask, don't tell" policy might make good business sense, but it has precluded United from being able to plead fraudulent misrepresentation claims here with any specificity.

United did not identify any specific representations to support either of its two fraud theories, and the Court agreed with Defendants that the complaint as pled was essentially an omission theory of liability, noting "what defendants specifically misrepresented to United Air Lines is still unclear."  Docket No. 59 at 5.  Not surprisingly, the Court also found that United alleged "no reliance" on the unidentified misrepresentations.  *Id.*

The Court explicitly rejected United's fraud theory in the FAC stating that "[o]ne customer buying multiple full-fare tickets, fully intending not to use one or more of those tickets, is not actionable fraud."  *Id.*.  With no duty to disclose their intentions with respect to flying on United's flights, Defendants simply could not be held liable for their silence.  As another federal court has noted: "While the Airlines would prefer to know in advance whether a passenger intended to travel on each segment for which he purchased a ticket – so that, for instance, they can sell tickets for any unused seats, and can plan their operations based on a more accurate count of passengers – their business objectives do not automatically trigger a passenger's duty to disclose his true itinerary, nor do they transform his silence on the subject into an 'intent to deceive.'"  *In re Northwest Airlines Corp.*, 208 F.R.D. 174, 193 (E.D.Mich. 2002).   In the absence of a contractually imposed duty to disclose, which United has not and cannot claim exists, there can be no fraud.  *Id.*[2]

Even more importantly, United's now discarded fraud theory could not be squared with the facts as alleged.  Quite simply, Mr. Halabi never stated that he intended to fly or pay for the ticket, and the contract made clear that there was no binding commitment to do either.  Having

---

[2]Similarly, the presentation of a voucher to United without disclosing that it had been sold could never be the basis for a fraud claim absent a duty to disclose such information to United, and such a duty indisputably did not exist. *Sahin v. Sahin*, 435 Mass. 396, 402 n.9 (2001).  In the FAC, United did not allege any specific representation upon which it relied in connection with the use of the vouchers by third parties.  Instead, it did the best it could in light of its "don't ask, don't tell" policy on the sale of vouchers, by alleging only: "Defendants made further misrepresentations to United when they caused void flight vouchers to be redeemed by those to whom Defendants have sold the vouchers."  FAC ¶52.  Given the absence of a duty to disclose, and the fact that United did not identify any alleged misrepresentation at all, the Court did not hesitate to dismiss the FAC.  Docket No. 59 at 5.

drafted the adhesion contracts at issue, United could not reasonably have understood the contractual language or the nature of the transaction any differently.  Massachusetts does not permit a party to allege reasonable reliance on representations that are inconsistent with the unambiguous written language of an agreement.  *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 438 Mass. 459, 467-469 (2003) ("Reliance on any statement or conduct of Roy made during the course of mutual congratulations at having reached a deal was unreasonable as a matter of law because it conflicted with the qualifying language of [the written agreement].").  Thus, Mr. Halabi could have shaken a dozen United employees' hands and said "we have a deal, and I can't wait to fly" and it still would not have supported a fraud claim given the contract expressly preserved Mr. Halabi's right not to fly and to obtain a full refund.  *Id.* at 467 (finding no reasonable reliance as a matter of law that a deal had been reached even though "at the end of the negotiations, [the parties] shook hands and expressed satisfaction with the deal they had struck" because the qualifying language in the written agreement stated otherwise, mainly, that no binding commitment existed); *see also Health Plans, Inc. v. New York Life Ins. Co.*, 898 F. Supp. 941, 949 (D. Mass. 1995) (Gorton, J.) (no justifiable reliance where representations were "directly contrary" to written agreement).

Accordingly, United had no choice but to change course.  However, the problem for United is that despite having records of purportedly hundreds of reservations in connection with the so-called fraud, SAC ¶22, it could not find any facts that would support a fraudulent *misrepresentation* – as opposed to a legally insufficient fraudulent *omission* – claim.

**B.**      **United's New Fraud Theory Is More Narrow But Otherwise Unchanged**

Hoping to avoid another dismissal, United does two things differently in the SAC.  First, with respect to the allegedly fraudulent acquisition of the vouchers, United dramatically

narrowed its fraud theory to cover only those reservations in which all three of the following conditions were present: (1) Mr. Halabi booked two tickets to two different destinations on the same day; (2) Mr. Halabi did not use his last name on one of the two reservations[3]; and (3) Mr. Halabi used a secondary frequent flyer account on the reservation that did not use his last name. Sealed Addendum to SAC, Docket No. 64 at ¶¶1-4.  This new liability theory is premised on the concept that Mr. Halabi misrepresented his reservations as being booked by two different people, intending to mislead United into issuing a ticket that – at least in theory – it might not have issued or might have canceled had it known the reservation was for the same person.  Although United does identify specific representations in connection with this new fraud theory (the use of a different version of his name and a different frequent flyer account number in making the reservation), United has limited its new fraud allegations to a single transaction concerning a flight to Denver on August 3, 2008.

Second, with respect to the allegedly fraudulent sale or redemption of the vouchers, United makes conclusory and vague allegations that Mr. Halabi intimated to United that the vouchers he obtained were transferred in compliance with their terms without alleging what he said, to whom, when or where.  Thus, with respect to this aspect of United's fraud theory, the

---

[3] While United contends that Mr. Halabi should not have booked reservations using his middle name according to the contract of carriage, United's failure to cite the relevant portions of the contract of carriage was no accident. Had United been fully candid with the Court, it would have noted that the "full name" in the contract of carriage means only the passenger's first and last name, thereby rendering each and every reservation made in the name of Omar Halabi fully compliant, and hence, not fraudulent.   The contract of carriage reads: "AT TIME OF RESERVATION UA REQUIRES THE FULL NAME CONSISTING OF FULL FIRST AND LAST NAME FOR EACH PASSENGER TO BE ENTERED INTO THE NAME FIELD OF THE RESERVATION."  Nor is there any reason to believe, and certainly no allegations in the SAC suggest as much, that Mr. Halabi was aware of this provision in the 50 page contract of carriage (which is incorporated into the ticket terms by reference through force of law only), let alone that Mr. Halabi had the intent to violate it.  Moreover, it is clear that United waived any argument (and is estopped from arguing otherwise) that any reservation made in the name of Omar Safar violated the terms of the contract of carriage, because United certainly alleges that Mr. Halabi was permitted to both "check in" to fly and obtain and redeem vouchers using that name repeatedly, albeit in the form of deficiently vague allegations.  Having definitively declined to enforce the contractual term (allegedly on repeated occasions), it certainly cannot rest its fraud claim based on that term now.

allegations are not materially different than those in the FAC, which similarly alleged that the mere presentation of the vouchers for redemption constituted fraud.

## II.     United's Claims Must Be Pled With Specificity

To survive a motion to dismiss, a complaint "is required to state 'enough factual matter (taken as true)' to support the elements of the claim." *Brown v. Sweeney*, 526 F. Supp. 2d 126, 129 (D. Mass. 2009) (discussing abrogation of more lenient pleading standard and quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)). "Conclusory statements do not satisfy this standard because they merely demonstrate a possibility and not a plausibility of entitlement to relief." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plaintiffs must do more than provide "an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Each and every element of the claim must be supported by alleged facts that, if true, would be sufficient to satisfy that element of the claim. *North American Catholic Educational Programming Foundation, Inc. v. Cardinale*, 567 F.3d 8, 14 (1st Cir. 2009) (plaintiff must plead "facts that, if true, would satisfy the specific elements of a claim as defined by state law."). With respect to claims sounding in fraud, such as those United asserts here, United must go even farther and "specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Systems Concepts, Inc. v. Synopsys Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

## III.    United Has Not Pled A Viable Fraud Theory On The Alleged Facts

United's fraud theories concerning both the acquisition and use of the travel vouchers are insufficient to state a claim. With respect to United's fraudulent "two different people" voucher

acquisition theory, United's claim must be dismissed because: (1) other than a single transaction, United knowingly chose to ignore the Court's order requiring that the allegations be pled with greater specificity; (2) with respect to the one transaction pled with greater specificity, the representations were truthful; (3) even if the identified representations could be deemed fraudulent, United conspicuously does not and *cannot* allege that it would have acted any differently had the allegedly "fraudulent" representations not been made, precluding any finding of detrimental reliance as a matter of law; and, (4) United alleges no damages in connection with the one transaction at issue.  Put more simply, even if Mr. Halabi had used a single name and frequent flyer account, making it clear to United that the same person booked both reservations, United would still not have cancelled the Denver reservation, and, most importantly, United does not plead otherwise.

With respect to the voucher sale fraud theory, United's allegations do not differ materially from those alleged in the FAC.  Other than the inclusion of vague and conclusory allegations of representations to unidentified persons on unidentified dates in unidentified locations, United has done nothing to refine this aspect of its fraud claim.  The reason, of course, is because not a single United employee ever heard or received any representation by Mr. Halabi intimating that the vouchers had not been sold.  Indeed, Mr. Halabi implores the Court to inquire of United as to what specific representations were made and to which specific United employees (who allegedly took action in reliance on the unidentified representations).  United may not plead fraud on information and belief and then use the discovery process to investigate whether any representation was made to test its paranoid suspicions.  One brings a fraud claim because the recipient of a representation took action in reliance on a specific statement made to the complaining party.  If the complaining party cannot even identify the fraudulent statement, and

the factual circumstances surrounding it, how can that party allege reliance on the statement? United must go fishing in different waters because Rule 9(b) prohibits its fishing here.

A. **United's Voucher Acquisition Fraud Theory Fails Even With Respect To The Denver Flight Allegations**

To its credit, United did at least attempt to identify representations in the SAC to support its theory that Mr. Halabi's acquisition of the travel vouchers was fraudulent because he attempted to mislead United into thinking two different people were purchasing "conflicting" tickets on the same day. It should be noted that even if this narrowed fraud theory were sufficient to state a fraud claim (which it is not), United only identifies one transaction that would be covered by its theory, a reservation made on an August 3, 2008 flight to Denver, the same day Mr. Halabi booked a flight to Los Angeles using his last name and regular frequent flyer account number. Sealed Addendum to SAC, ¶3. Without explanation, United stops there and does not identify any other purported misrepresentations in connection with this "two different people" fraud theory. United obviously should know at the very least the content of the representations upon which it relied, and should have had no difficulty identifying them in response to the Court's request for greater specificity. Indeed, the Court could not have been more clear with United when stating:

> Fraud hasn't been proven yet. It hasn't even been appropriately alleged yet. And it may be that the second time around I will determine that a claim has not been stated. But as I see it, a claim is possibly stated *if I get the kind of detail that I need*.

Docket No. 59 at 11 (emphasis added).

As the Denver flight allegations discussed herein evidence, United clearly knew how to allege at least the who and what of the alleged misrepresentations, and has access to at least that "kind of detail" that the Court would need to find that a fraud claim is adequately alleged.

Despite United's claim that there were over 100 false representations (the same number United claimed before it substantially narrowed its fraud theory), *compare* SAC ¶22 *with* FAC ¶37, United does not identify the content of a single misrepresentation by Mr. Halabi other than those identified in the Denver flight allegations, forcing "both the defendant and the Court to search in vain for the misrepresentations that might form the basis of [its] claim." *Health Plans, Inc.* 898 F. Supp. at 948.  Rule 9(b) requires more.

With national legal counsel and abundant resources, United should not be afforded yet another chance to do the exact same thing that the Court already requested.  Moreover, the Denver flight allegations are insufficient to rescue United's new fraud theory even with respect to just that single transaction, rendering any further amendment futile.  First, all of these representations were truthful.  Mr. Halabi promised to pay for the refundable ticket to Denver if, and only if, he elected to fly on the flight.  He never acted inconsistently with those representations, as he could have flown to Denver if he so chose.  United cannot contend that Mr. Halabi represented anything more than that, and because he never elected to fly on the flight (or any other flight), he was under no obligation to pay for the tickets.  On the contrary, he had every right to a refund of the fare according to the contractual language United itself drafted.  There simply is no fraud here.  In addition, United does not prohibit a person from booking refundable fares to different destinations on the same day, and the SAC does <u>not</u> plead otherwise, as explained in more detail below.

### 1.        United Did Not And Cannot Plead Detrimental Reliance

Even more problematic for United is that its alleged reliance consists of issuing a ticket based on the representations that Mr. Halabi made when purchasing the fully refundable fare to Denver.  Sealed Addendum to SAC, ¶2.  Notably, United does not allege that it would not have

issued that ticket had Mr. Halabi booked the Denver flight using the same name and account he used when booking the Los Angeles flight on that same day. The reason United does not allege this is because it cannot do so. United regularly accepts such reservations. It is not at all uncommon that a customer may have two competing scheduling commitments and not know which one will be attended. Indeed, that is an extremely logical reason to book fully refundable fares. So while United does allege that such "duplicate bookings" are "subject[] to cancellation," without explaining how or why, United does not and cannot allege that it actually cancels such reservations. SAC, ¶39. Indeed, Mr. Halabi has booked flights to two different destinations on the same day to two different cities, and United did <u>not</u> cancel them:

| | |
|---|---|
| June 4, 2008: | Boston, MA to San Francisco, CA; and, Boston, MA to Los Angeles, CA |
| August 8, 2008: | Washington DC (Dulles) to Seattle, WA; and, Washington DC (Dulles) to San Francisco, CA |
| August 9, 2008: | Washington DC (Dulles) to Orlando, FL; and, Washington DC (Dulles) to San Jose, CA |

*See* Affidavit of Omar Halabi, ¶2.

Because United did not and cannot allege that such "duplicate bookings" would have been cancelled, it has not pled facts that would establish detrimental reliance. *Kuwaiti Danish Computer Co.*, 438 Mass. at 469-470 (detrimental reliance element of fraud claim requires plaintiff to show that "but for the alleged misrepresentation" it would not have suffered damages.). No party can state a valid claim for fraud if it would have been in the exact same position if the alleged misrepresentations were never made in the first instance. Stated differently, even assuming Mr. Halabi intended "to prevent United from realizing that the same person was booking multiple and conflicting flights," it did not matter because United would have allowed the reservations even if it had realized "the same person was booking multiple and

conflicting flights." Sealed Addendum to SAC, ¶2. Thus, United has not pled facts that, if proven, could plausibly establish detrimental reliance even with respect to the one allegedly fraudulent transaction it pled with greater specificity. *Cardinale*, 567 F.3d at 14 (plaintiff must plead "facts that, if true, would satisfy the specific elements of a claim as defined by state law.").

### 2. United Fails To Plead Facts That Would Support A Damages Award

Moreover, United does not allege any facts that, if proven, would establish damages even assuming United could have alleged it cancels duplicate bookings (which it did not and cannot allege), such as: (a) that United did not sell another ticket on the Denver flight that it otherwise would have in the absence of Mr. Halabi's reservation (it is important to note that United's business model is to keep selling tickets even though there are no more seats available, which is why overbooking occurs in the first instance); (b) even if it would have sold an additional ticket, that United would *not* have refunded that other hypothetical ticket when it bumped a different passenger in lieu of bumping Mr. Halabi; (c) that Mr. Halabi ever obtained a travel voucher in connection with the Denver reservation; or (d) even if a voucher was obtained, that it was sold to anyone, the identity of the voucher purchaser, that the voucher was "void if sold," what and when the unidentified purchaser represented to United, how that representation was connected to Mr. Halabi, and how United purportedly reasonably relied to its detriment on the representation.

Thus, United alleges neither reliance (reasonable or detrimental) nor damages in connection with the Denver reservation allegations. Merely taking a seat out of inventory, which is the only thing United has actually alleged with respect to the Denver flight (or the other unidentified alleged duplicate booking reservations), does not cost United anything. While the Denver reservation allegations serve to highlight United's complete failure to plead in conformity with Rule 9(b) throughout the remainder of the SAC, even these slightly more

specific allegations still do not allege facts that, if proven, would support each element of a fraud claim. *Cardinale*, 567 F.3d at 14 (1st Cir. 2009) ("facts that, if true, would satisfy the specific elements of a claim as defined by state law.").

**B.    The Remainder Of United's Fraud Theory Concerning The Sale Of The Vouchers Is Still Not Pled With Specificity.**

Because nobody ever made a representation to United that the vouchers had not been sold or purchased, United could not and did not allege that it relied on any such representation in the FAC. Instead, it argued that the mere use of the voucher after sale constituted fraud, even in the absence of any misrepresentation. The pertinent allegations of the FAC, which United unsuccessfully attempted to cast in the form of a misrepresentation claim, were: "Defendants made further misrepresentations to United when they caused void flight vouchers to be redeemed by those to whom Defendants have sold the vouchers." FAC, ¶52. Giving the most generous reading possible to that nonsensical sentence, United's "misrepresentation" claim was that the mere redemption of a voucher that had been sold constituted an actionable misrepresentation. The Court rejected this theory because "what defendants specifically misrepresented to United Air Lines is still unclear." Docket No. 59 at 5.

The problem for United when drafting the SAC is that nobody ever told United that the vouchers were "valid" or were "transferred in compliance with the Terms." Sealed Addendum to SAC, ¶¶ 2, 5. That did not stop United from making conclusory assertions to the contrary, without ever identifying the factual circumstances surrounding such alleged representations. Because this is a fraud claim subject to Rule 9(b), that is plainly insufficient.

The first element of this fraud claim is that Defendants supposedly told the persons who bought the vouchers to tell United their reservations would be paid for with a "valid" voucher. SAC, ¶2. This allegation does not identify in any detail the what, where, or when of these

representations – just unidentified representations made to unidentified voucher recipients on unidentified days.  Moreover, United carefully does not allege that any of the voucher recipients ever actually made such a representation to United.  *Id.*  Instead, United alleges it relied on the representation Defendants made *to the voucher recipients*, *not United*, representations which United could not have ever heard or witnessed.  *Id.*  Given United could not have relied on representations it never received, this aspect of the fraud claim must fail.  Also, it should be noted that if United were to contend that one or more voucher recipients did make a representation that the vouchers were valid, it should be able to identify at the very least the identity of the speaker, the date of the representation, and the United employee who received and relied on the representation.  *Alternative Systems Concepts*, 374 F.3d at 29 (affirming dismissal of fraud claim where plaintiff "did not provide any details as to who allegedly uttered the misleading statements, to whom they were made, where they were made, when they occurred, and what actions they engendered.").  Those allegations are missing from the SAC because nobody ever made such a representation to any United employee, and, United carefully, but misleadingly, does not plead otherwise.

The second element of this fraud theory is that Defendants "would falsely state to the United agent that the voucher had been transferred in compliance with the terms."  Sealed Addendum to SAC ¶5.  This again is artful and deceptive pleading that cannot pass muster under Rule 9(b).  What exactly did Defendants say, to whom, and when?  Alleging that the Defendants "would state" something describes a general scheme but does not identify any statement actually made, when that statement was made, and to whom.  *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud … or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations

are repeated.").  While non-fraud claims might survive vague and conclusory allegations like this, Rule 9(b) precludes them here.  If a United agent was the recipient of the representations, as the sealed addendum to the SAC alleges in paragraph 5, United ought to be able to identify the content and date of the representation and to whom it was made.  The First Circuit has not hesitated to affirm the dismissal of fraud claims pled in such a purely conclusory fashion:

> Despite the fervor with which [plaintiff] denounced this treachery, it did not provide any details as to who allegedly uttered the misleading statements, **to whom they were made, where they were made, when they occurred, and what actions they engendered. … In short, [plaintiff's] misrepresentation claim was wholly conclusory and lacking any semblance of specific detail**. Given the strictures of Rule 9(b), the district court's dismissal of that barebones claim was entirely proper.

*Alternative Systems Concepts*, 374 F.3d at 29 (emphasis added); *Bio-Vita Ltd. v. Rausch*, 759 F.Supp. 33, 38 (D.Mass. 1991) ("Defendants also fail to identify the specific individuals to whom these alleged fraudulent misrepresentations were made.  Defendants' conclusory allegations simply fail to comply with the particularity requirements of Rule 9(b).").  Because United cannot and does not plead the "kind of detail" that the Court has requested, that Rule 9(b) requires, and that the First Circuit demands, the claim must be dismissed.

Even if United had pled this aspect of the fraud claim with specificity, which it has not, it did not plead any facts that, if proven, would establish damages due to United's reliance on the representations.  First, United does not allege that any vouchers were obtained in connection with "duplicate bookings" using different names and frequent flyer account numbers to different destinations on the same day, which is the only remaining fraudulent voucher acquisition theory.  Second, even if vouchers were obtained and sold (assuming the vouchers stated that they were void if sold), United never alleges that any vouchers were ever used on a full flight, thereby depriving United of the ability to sell a ticket on that flight.  Instead, United only alleges that it

has "taken seats out of its inventory."  SAC, ¶33.  Absent allegations that voucher users actually took up a seat on a full flight that could have gone to a paying customer, United has pled no facts that would support an award of damages.  *See Trans World Airlines, Inc. v. The Flyer's Edge*, No. 87-4958, 1989 WL 122391 (N.D.Ill. Sept. 29, 1989) (holding that airline was "not damaged with respect to [travel voucher] users who flew on flights that were not full" and that damages were only available for travel vouchers users "who in fact displaced fare-paying customers."); *Cardinale*, 567 F.3d at 14.[4]

## III.   United's Tortious Interference Claim Has Not Changed From The FAC And Must Be Dismissed

The elements of a tortious interference with a prospective business relationship are: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with the relationship through improper motive or means; and, (4) the plaintiff's loss of advantage as a direct result of the defendant's conduct."  *Singh v. Blue Cross and Blue Shiled of Massachusetts, Inc.*, 182 F.Supp.2d 164, 178 (D.Mass. 2001).  Because the core allegations of the SAC accuse Mr. Halabi of fraudulent conduct, and the tortious interference claim incorporates those allegations to allege an improper means, this claim must also satisfy the heightened pleading standard of Rule 9(b).  *Cardinale*, 567 F.3d at 14-15 ("[T]he case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud;" "given that fraudulent misrepresentation is the lynchpin, this [tortious interference] claim too triggers Rule 9(b).").  Because the fraud claim was not adequately pled, this claim too must be dismissed for the same reason.

---

[4] Implicitly acknowledging that the vouchers at issue here did not cause any damages, United improperly seeks disgorgement of Defendant's profits in connection with its fraud claim, which is simply not supported by any Massachusetts law.  *See* SAC ¶35.  This is only one example of many where United seeks relief which is not legally available.

However, even if that were not the case, the tortious interference claims fails for additional, independent reasons.  In essence, United's claim is that Mr. Halabi's fraudulent conduct to obtain and sell travel vouchers deprived United of its ability to sell tickets to "the traveling public."  SAC, ¶¶ 43-47.  These allegations have not changed in **any** material way from the FAC.  The Court previously dismissed this claim because United needed "to be more specific about the particular business relationship with which the defendants allegedly interfered and the specific damages the plaintiff allegedly suffered as a result."  Docket No. 59 at 5.  Just as the Court dismissed the tortious interference claim based on these allegations before, it should do so again now.

The deprivation of the ability to sell product to the general public is too vague to support a tortious interference claim:

> The plaintiff's definition of advantageous relations for these purposes is too expansive.  It appears that the plaintiff's theory is that the existence of a potential market for a company's product is sufficient to create a prospective advantageous relationship with each potential customer in that market.  Massachusetts does not interpret this tort to reach so far.  The plaintiff has not identified any case in which a court applying Massachusetts law has allowed a claim for intentional interference with advantageous business relations where the business relationship said to have been interfered with was as inchoate as alleged here.

*Laser Labs, Inc. v. ETL Testing Laboratories, Inc.*, 29 F.Supp.2d 2123-24 (D.Mass. 1998); *Singh*, 182 F.Supp.2d at 178 (rejecting physician's claim that the defendant's conduct caused a "loss of referrals" of unidentified patients, because the plaintiff "may not speculate about future business relationships when alleging this tort; instead, only a 'probable future business relationship anticipating a reasonable expectancy of financial benefit' suffices.").  Here, like the plaintiff in *Singh*, United alleges "no specific relationship that was interfered with by" Mr. Halabi.  *Id.*  Even if United could have sold tickets to the "traveling public" as it alleges, that is plainly insufficient to state a tortious interference claim.  This speculative and vague business

relationship with all potential consumers in the relevant market is insufficient to state a claim for this tort.[5]

Finally, United cannot allege that any damages United suffered were the "direct result" of Mr. Halabi's allegedly tortious conduct.  *Adcom Products, Inv. v. Konica Business Machines USA, Inc.*, 41 Mass.App.Ct. 101, 106 (Mass.App.Ct. 1996) (affirming "jury's determination as to causation" in rejecting tortious interference claim).   First, just as the allegedly fraudulent representations did not cause any detrimental reliance by United (as it would have honored the reservations even if they were booked using the same name and frequent flyer account number), United pleads no injury that is the "direct result" of the same allegedly tortious conduct.  Second, United does not allege that any of the "void" vouchers were used on full flights, depriving United of revenue by precluding it from selling additional tickets.  Finally, even if Mr. Halabi had not sold the vouchers, but merely given them away or used them himself, United still would have lost a seat on one of its flights, regardless of who ultimately sat in that seat.  Thus, once again, the allegations of wrongful conduct did not *directly result* in an injury to United that would not have occurred "but for" that conduct.  Having failed to plead any injury to United was the "direct result" of the fraudulent conduct underpinning the tortious interference claim, and having failed to plead the fraud with the requisite level of specificity in the first instance, United's tortious interference claim must be dismissed.

---

[5]  United does not and cannot claim that Mr. Halabi interfered with United's prospective business relationship with the unidentified purchasers of vouchers on the secondary market.  As the sealed allegations make clear, Mr. Halabi initiated, not interfered with, their business relationship with United.  Had Mr. Halabi not sold these vouchers on the secondary market, customers in that market would have turned to whatever other vouchers were available on the secondary market.  Moreover, even if a specific secondary market customer might have had a pre-existing prospective business relationship with United – facts which are nowhere alleged in the SAC – there certainly was no way for Mr. Halabi to have known of that relationship and to have intended to interfere with it.

**IV.     The Civil Conspiracy Claim Fails As Derivative Of The Tort Claims**

As the Court already recognized in dismissing the FAC, the civil conspiracy claim cannot survive unless United states a viable fraud or tortious interference claim.  Docket No. 59 at 5. Having failed to do so, that claim must also be dismissed again.  *Id.*

**V.     This Court Will Be The _Only_ Court Ever To Find That Fraud Claims Survive ADA Preemption When The Claims Concern Customers In Privity With An Airline For Air Transportation Services**

The Court previously rejected Mr. Halabi's argument that state tort claims concerning the terms and conditions for air transportation services are preempted by the ADA, finding that United's claims have too insignificant an effect on the subject matter to warrant preemption.  Mr. Halabi fully incorporates the arguments made in support of dismissal of the FAC here, including the judicial estoppel argument, understanding that the Court's "judgment is not going to change with respect to the preemption argument."  Docket No. 59 at 10.  However, it should be noted that this Court's decision was based on only two cases that did not involve persons who had entered into a contract concerning the provision of air transportation services.  If *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995) stands for no other proposition, it is that contracts for such services define the full scope of the parties' obligations and state tort law may not be used to alter those obligations or enhance the remedies available for any breach of those obligations.  In fact, no court has ever held that "extra contractual common law business torts" that "directly involve airline passengers" in privity with an airline survive ADA preemption. *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 288 (5th Cir. 2002), *cert. denied*, 537 U.S. 1044 (2002).  There is no intellectually honest means of distinguishing the significance of the effect on air transportation services of United's claims here and those asserted by countless passengers.  As United itself has successfully argued, the significant effects test is

reserved for "borderline" cases that do not involve claims directly related to air transportation services, such as airline employee discrimination claims or personal injury claims, not cases involving "access to flights" by persons in privity with the airlines.

February 16, 2010                    Respectfully submitted,

                                     /s/ Todd S. Heyman
                                     Todd S. Heyman (BBO# 643804)
                                     theyman@shulaw.com
                                     Ian J. McLoughlin (BBO# 647203)
                                     imcloughlin@shulaw.com
                                     Robert E. Ditzion (BBO# 660962)
                                     rditzion@shulaw.com
                                     SHAPIRO HABER & URMY LLP
                                     53 State Street
                                     Boston MA 02109
                                     Telephone:  (617) 439-3939
                                     Facsimile:   (617) 439-0134


**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 16, 2010.

                                     **/s/ Todd S. Heyman**
                                     Todd S. Heyman