United States District Court
District of Massachusetts

```
_____
                               )
UNITED AIR LINES, INC.,        )
       Plaintiff,              )
                               )
       v.                      )   Civil Action No.
                               )   09-10394-NMG
JOSHUA ALLEN GREGORY and OMAR  )
SAFAR HALABI,                  )
       Defendants.             )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This matter arises from a dispute between the plaintiff, United Air Lines, Inc. ("United") and defendants Joshua Gregory Allen ("Allen") and Omar Safar Halabi ("Halabi") (collectively, "the defendants") concerning the defendants' alleged scheme to obtain and sell flight vouchers. Before the Court are the defendants' motions to dismiss.

**I.   Factual Background**

The complaint alleges that beginning around April, 2008, and continuing on more than 100 subsequent occasions, the defendants engaged in a scheme to defraud United. Pursuant to that scheme, the defendants allegedly purchased multiple, refundable, one-way tickets on heavily booked United flights to different destinations on the same day. Using disguises and altering their names to avoid detection, the defendants would volunteer to give up their seats and accept a proffered flight voucher in exchange.

-1-

For example, United alleges that on August 3, 2008, defendant Allen used four different aliases to book the following flights out of Boston:

1) An 11:59 a.m. flight to Chicago under the name "Mr. Joshua Gregory";

2) A 3:30 p.m. flight to San Francisco under the name "Mr. Joshua Allen";

3) A 4:35 p.m. flight to Denver under the name "Mr. Allen Gregory"; and

4) A 6:09 p.m. flight to Los Angeles under the name "Mr. Gregory Joshua".

United also alleges that the defendants would provide different Loyalty Program Member Identifications during the booking process in order to conceal further from United that their reservations all pertained to the same person. In the event that the gate agent did not seek volunteers to give up their seats, the defendants would simply choose not to board the aircraft and obtain a full refund for their tickets.

After collecting their free flight vouchers, the defendants would then sell those vouchers on eBay or through other various venues. Although the vouchers included restrictions expressly stating that they would be void if sold, the defendants apparently encouraged buyers to circumvent those restrictions by falsely claiming to United that they had validly obtained the vouchers.

United maintains that the defendants' scheme has caused it

1) to authorize flight vouchers that would not have otherwise been issued, 2) to take seats out of its inventory that could have otherwise been sold to paying customers and 3) to provide free air travel to customers who were not entitled to such travel.  United claims that, as a result of the defendants' conduct, it has lost business in excess of $75,000.

## II.  Procedural History

This case was filed on March 13, 2009.  On that day, United filed an ex parte motion to seal its complaint on the grounds that anyone who read it carefully would be able to use the information to carry out a copy-cat scheme.  In a Memorandum and Order dated April 24, 2009, the Court allowed United's motion, in part, and denied it, in part.  Because protecting United against future fraud necessitated the sealing of only specific details of defendants' scheme (rather than the entire complaint), the Court allowed United to retrieve its original complaint and file an amended version in its place.  The amended complaint was to contain the general allegations of the scheme without specific details.  The latter were to be included only in a sealed addendum.

Rather than filing a sealed addendum, United filed two entirely separate complaints, both entitled "First Amended Complaint" ("FAC").  The unsealed version conspicuously redacted the perceived sensitive paragraphs.  That complaint alleged four

counts against the defendants: 1) common law fraud (Count I), 2) intentional inference with advantageous business relationships (Count II), 3) violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a), (Count III) and 4) civil conspiracy (Count IV).

After United filed its FAC, both defendants, represented by separate counsel, moved to dismiss United's allegations for failure to state a claim as well as on preemption grounds. At a hearing on December 21, 2009 ("the December Hearing"), the Court dismissed all four counts of United's FAC without prejudice to the filing of a second amended complaint within 30 days.

The Court made it clear, however, that the complaint was to be filed publicly and that only the sensitive details of the scheme could be pled in a separate, sealed addendum. The Court also emphasized that, although the requested sealing was to be permitted at the initial pleading stages of the litigation (where the litigants' substantive rights were not at stake), it would not necessarily be warranted if the plaintiff continued to pursue its action.

Finally, the Court explained that the dismissal of the FAC was not on preemption grounds (that issue having been decided in United's favor) but rather because United had not adequately pled its claims. The Court briefly described the problems with each count as follows:

> 1) the alleged fraudulent misrepresentations (Count I) were not stated with sufficient particularity;

>    2)   the alleged intentional interference claim (Count II) did not state the particular business relationship with which the defendants interfered or the damages the plaintiff suffered as a result;
>
>    3    the Lanham Act claim (Count III) contained no allegations that the defendants used United's trademark under circumstances that, if true, would likely lead to consumer confusion; and
>
>    4)   the claim for civil conspiracy (Count IV) was inadequate for the same reasons set forth with respect to the fraud and intentional interference claims.

On January 20, 2010, in compliance with the Court's directive, United filed a Second Amended Complaint ("SAC") with a sealed addendum.  The SAC omits the Lanham Act count but retains the three common law claims (fraud, intentional interference with advantageous business relations and civil conspiracy).  The Court, nevertheless, retains subject matter jurisdiction by virtue of diversity of citizenship.  Defendants Halabi and Allen filed separate motions to dismiss the SAC in February, 2010. United filed a timely consolidated opposition to those motions which are currently before the Court.

Having considered the allegations in the sealed addendum, the Court has determined that the purported scheme is not so subtle or complex as to require the sealing of its details. Given the relative simplicity of the scheme, the common law presumption of public access to judicial documents outweighs the risk that those who read the complaint will thereby be enabled to engage in a copy-cat scheme.  From this point forward, therefore,

all pleadings in this case, as well as this Memorandum and Order, will be public.

### III. **Legal Analysis**

#### A. **Standard of Review**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not, however, applicable to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Threadbare recitals of the legal

elements, supported by mere conclusory statements, do not suffice to state a cause of action. Id. Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

**B.   Application**

**1.   Fraud (Count I)**

To state a claim for intentional misrepresentation, United must allege that 1) the defendants knowingly made a false statement of material fact, 2) the defendants intended that it be relied on by United and 3) United actually and reasonably relied on the statement. See Zimmerman v. Kent, 575 N.E.2d 70, 74 (Mass. App. Ct. 1991).

The theory of fraud asserted by United in the Second Amended Complaint is significantly narrower than the one asserted earlier. In the FAC, United's fraud theory was premised, at least in part, on the defendants' failure to disclose to United that they did not intend to board the flights they had booked or to pay United for the reservations. The Court rejected that theory at the December Hearing, on the grounds that one customer buying multiple, full-fare tickets fully intending not to use one or more of such tickets does not commit actionable fraud. The Court indicated, however, that the systematic acquisition and resale of flight vouchers under false pretenses could constitute

fraud but that the alleged scheme, at least as described in the FAC, had failed to so plead.

In light of the Court's rejection of United's "duty to disclose" theory of fraud, the SAC asserts a slightly different argument. The sealed addendum breaks down the defendants' alleged scheme into two components: 1) the "scheme to obtain vouchers" and 2) the "scheme to redeem void vouchers". As part of the first scheme, United alleges that the defendants, using modified names, disguised appearances and different loyalty program numbers, purchased refundable one-way tickets on heavily-booked flights to different destinations on the same day, volunteered to give up their seats and received vouchers in exchange. As discussed above, United has provided several examples of those allegedly fraudulent transactions, including dates and times of the defendants' ticket purchases, their alleged destinations and the aliases they used to make those reservations.

The details of the second scheme are less clearly articulated. The addendum states that once the defendants sold a voucher, they would instruct the recipient to tell United that the voucher was valid. The scheme would then work as follows:

1) in reliance on the voucher recipients' misrepresentations, United would provide them with a record locator number associated with each reservation;

2) defendants' customers would contact the defendants and give them the record locator numbers;

    3)    defendants would then go to the airport in person, provide the United agent with the record locator number and falsely state that the voucher had been transferred in compliance with its terms; and

    4)    in reliance on that representation, United would redeem the voucher and issue a ticket for the voucher recipient.

The defendants (whose separate arguments are not inconsistent) contend that the renewed allegations in the SAC do not state a claim for fraud because United does not: 1) allege fraud with the requisite particularity required by Fed. R. Civ. P. 9(b), 2) properly allege reliance or 3) demonstrate that it has incurred damages as a result of the defendants' alleged misconduct.

### a. Compliance with Fed. R. Civ. P. 9(b)

The procedure for pleading fraud in federal diversity suits is governed by Fed. R. Civ. P. 9(b). That rule mandates that in all averments of fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the requirement, the complaint must, at a minimum, specify the "time, place, and content of the alleged false or fraudulent representations." Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18-19 (1st Cir. 2002).

Halabi contends that even the narrower allegations of fraud laid out in United's SAC do not conform with Fed. R. Civ. P. 9(b). Despite United's claim that the defendants made over 100 false representations, United identifies only one specific action

taken by Halabi involving the purchase of a pair of conflicting flight reservations from Boston to two different destinations on August 3, 2008. Even that transaction, Halabi argues, does not state a claim for fraud, because his representations made in connection with the flight reservations were truthful. He promised to pay for the refundable tickets if, and only if, he chose to board the flights. Given that he chose to stay home, Halabi avers that he was under no obligation to pay for the tickets.

Halabi's arguments are misplaced. Although, as Halabi points out, United's SAC does not describe the time, place and contents of each of the 100 alleged misrepresentations, that level of specificity is not required by Rule 9(b). Although the rule mandates that the plaintiff state the circumstances of the fraud with particularity, he need not plead all of the evidence or facts supporting his claim. See U.S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co., 147 F. Supp. 2d 39, 46-47 (D. Mass. 2001); Westinghouse Elec. Co. LLC v. Healy, 502 F. Supp. 2d 138, 142 (D. Me. 2007) (complaint that provided several examples of allegedly fraudulent expense account reimbursements provided sufficient detail). Rather, the rule is intended to give defendants notice of the plaintiff's claim, to discourage fishing expeditions and "strike suits" and to protect defendants from baseless allegations that may damage their reputations.

Parke-Davis, 147 F. Supp. at 46; Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).

Contrary to Halabi's assertion, this is not a case where

> [t]he plaintiffs' veiled allegations have forced both the defendant and the Court to search in vain for the misrepresentations that might form the basis of their claim.

Health Plans, Inc. v. New York Life Ins. Co., Inc, 898 F. Supp. 941, 948 (D. Mass. 1995) (where a "cryptic" recital of the general elements of a fraud claim were found to be wanting). The allegations in the sealed addendum, although by no means exhaustive, describe with sufficient particularity: 1) the methods the defendants used to obtain vouchers, 2) the steps they took to prevent detection by United (including the specific aliases they used), 3) the process by which they sold the flight vouchers and 4) the false representations they made to United employees to help the voucher recipients redeem those vouchers.

Furthermore, strict application of Rule 9(b) may be relaxed in certain circumstances. For example, when the underlying facts are "peculiarly within the defendants' control," less specificity may be required pending discovery. Parke-Davis, 147 F. Supp. at 47. Here, given that United was not privy to the defendants' conversations with the voucher recipients, it is reasonable to excuse, at least at this stage, the plaintiff's inability to plead the circumstances surrounding those transactions with a "high degree of precision." Id. Furthermore, where, as here,

the alleged fraud occurs over an extended period of time and involves numerous transactions, pleading the specifics of each transaction is unnecessary.  Id.

Halabi's second argument, that the representations he made in connection with the flight reservations were truthful (and therefore, not actionable) misses the point.  United does not allege that the purchase of fully refundable tickets to multiple destinations in one day is, in and of itself, fraudulent.  Rather, those purchases are allegedly part of a larger scheme which involves the acquisition of vouchers under false pretenses and their unlawful redemption.

Thus, with the additional details that United has alleged in the sealed addendum to the SAC, the Court is satisfied that the fraud claim complies with Fed. R. Civ. P. 9(b).

### b. Reliance

Both defendants argue that United has not (and cannot) plead reliance on their alleged misrepresentations because United would have allowed them to purchase multiple tickets on parallel flights even if it had been aware that the same person was booking both tickets.  They suggest that the very nature of fully-refundable tickets is to allow a single purchaser to make "duplicate bookings" and decide to use or not use the tickets as he desires.  Thus, even if the defendants had not altered their names or appearances, United would (arguably) have issued them

the tickets anyway.

The defendants' argument, however, begs the question: if United would have issued the duplicate tickets anyway, why did the defendants go to such lengths to change their names and appearances? Moreover, the defendants fail to address the broader picture. The alleged fraud, as explained above, is not confined to the defendants' use of altered names and disguises to book multiple tickets. Although those misrepresentations may have reduced the risk that United would detect the scheme, they were not crux of the purported fraud. The apparent alleged fraud in this case (and the one on which United reasonably relied) consists of the representations made by the defendants and the voucher recipients that the vouchers had been transferred in compliance with their terms. United claims that had it known the vouchers were invalid, it would not have redeemed them or issued tickets to the voucher recipients. Moreover, even if the defendants did not affirmatively represent to the United agents that the vouchers had been "transferred in compliance with the terms," the act of exchanging the vouchers for tickets is an implicit assertion that they are valid.

Thus, despite the defendants' arguments to the contrary, the Court finds that United has properly pled reliance.

        **c.**    **Damages**

The defendants' arguments concerning damages are also

unavailing. The defendants assert that United has improperly pled damages because "merely taking a seat out of inventory" does not cost United anything. In other words, United has not shown that, but for defendants' scheme, it would have sold more tickets and earned more money.

Defendants' argument falls short on several levels. First, United has alleged that, in reliance on the defendants' scheme, it has not only

> taken seats out of its inventory that it could have otherwise sold, [but also] provided free air travel to passengers who are not entitled to such travel [and] lost the opportunity to sell tickets and services to those passengers and other potential United customers.

United claims that those damages amount to at least $75,000.

Moreover, contrary to Halabi's suggestion, United need not plead the damages component of its fraud claim with the same particularity as the other elements. Rule 9(b), "while requiring allegations of fraud to be stated with particularity, does not require particularity as to the element of damages." Minuti v. Johnson, 2003 WL 260705, at *2 (N.D. Ill. 2003). Thus, although United has not identified particular customers who, but for the defendants' scheme, would have bought tickets on United's flights, it has adequately pled that the defendants' actions caused it to incur substantial damages. See American Airlines v. Platinum World Travel, 769 F. Supp. 1203, 1207-08 (D. Utah 1990) ("[T]he plaintiff need not document a specific instance of lost

revenue in order to establish that it has been injured and that it is entitled to damages.")

In sum, United's SAC, with respect to its fraud claim, adequately addresses the deficiencies in the FAC and, accordingly, the fraud claim will not be dismissed.

### 2. Tortious Interference with Business Relations (Count II)

To state a claim for intentional interference with an advantageous business relationship, United must allege: 1) the existence of a business relationship, 2) the defendants' knowledge of that relationship, 3) the defendants' intentional interference with that relationship through improper motive or means and 4) the plaintiff's loss of advantage as a result of that interference. Singh v. Blue Cross and Blue Shield of Massachusetts, Inc. 182 F. Supp. 2d 164, 178 (D. Mass. 2001).

In the SAC, United alleges that the defendants' scheme interfered with United's relationship with its customers by causing passengers to pay the defendants, rather than United, for their seats on United flights. Halabi contends that those allegations cannot support a claim for intentional interference because United's future dealings with prospective customers are too speculative to establish a "business relationship" under the first element of the tort. The Court disagrees.

It is well-settled that the tort of intentional interference extends to prospective business relationships so long as the

plaintiff has a "reasonable expectancy of financial benefit" from those relationships.  Singh, 182 F. Supp. 2d at 178; Brown v. Armstrong, 957 F. Supp. 1293, 1305 (D. Mass. 1997); see also Blackstone v. Cashman, 860 N.E.2d 7, 12 (Mass. 2007) ("The tort of intentional interference with advantageous relations protects a plaintiff's present and future economic interests") (emphasis added).  Here, United alleges that it had a reasonable expectation that it would have sold the seats that the defendants caused to be withdrawn from its inventory.  That is enough to satisfy the first element of the tort of intentional interference, and, accordingly, the claim will not be dismissed.

### 3.    Civil Conspiracy (Count III)

Given that United has stated viable claims for fraud and intentional interference, its conspiracy claim, which is derivative of the other two claims, will also survive.

### ORDER

In accordance with the foregoing, Defendants' motions to dismiss (Docket Nos. 67 & 70) are **DENIED**.

**So ordered.**

                                         /s/ Nathaniel M. Gorton
                                         Nathaniel M. Gorton
                                         United States District Judge

Dated May 20, 2010